# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**RON DAVID ROCK**                                                                                                          **PLAINTIFF**

**v.**                                                                                                                    **NO. 5:24-cv-181-BJB**

**JUDGE PERLOW, ET AL.**                                                                                                    **DEFENDANTS**

\* \* \* \* \*

## OPINION & ORDER ADOPTING REPORT & RECOMMENDATION AND DENYING MOTIONS FOR EMERGENCY RELIEF

### A. Rock's Claims

In 2021, Judge Perlow presided over a child-custody dispute between Ron Rock and the mother of their minor child, K.R., in Marshall County Family Court. Complaint (DN 1) at 7. According to Plaintiff Ron Rock, who is representing himself *pro se* in this follow-on civil litigation, his relationship with his child "does not exist because Judge Perlow enabled [K.R.'s mother's] rogue behavior without consequence or justification." *Id.* at 14. Among other accusations of illegality, Rock alleges that Judge Perlow allowed K.R.'s mother to "kidna[p]" her, "erased" $18,000 of child support payments due to him, and restricted Rock's visitation to see his child. *Id.* at 7–9, 14. Rock's allegations against Judge Perlow, though not always clear, assert violations of his constitutional rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *Id.* at 9–10.

Rock further claims the Marshall County Attorney failed to "uphold the Parental Kidnapping Prevention Act ([t]he enforcement of child custody across states)," and "[f]ailed to use powers and due duties in KRS CH 15, 65, AND 69 (sic)." *Id.* at 11. The "Child Support Enforcement" agency, he maintains, further violated Ky. Rev. Stat. § 403.213 by "fail[ing] to follow the procedure in the calculation and removing of a debt owed to [Rock]," apparently because the agency did not correct Judge Perlow's violations. *Id.* And the Administrative Office of the Courts allegedly neglected its duty to "overse[e] the conduct of judges and ensur[e] that they uphold the constitutional rights of individuals." *Id.* at 12. The AOC's neglect, according to the Plaintiff, "resulted in significant harm to [Rock]'s parental rights and well-being." *Id.*

### B. Motions Practice

Soon after Rock filed his Complaint, the Defendants began filing motions to dismiss (DNs 4, 5, and 9). Rock responded by filing a motion to amend his complaint (DN 6), opposition briefs in response to the motions to dismiss (DNs 10, 12, and 25), and about two dozen additional motions. The latter category includes three motions for summary judgment (DNs 11, 13, 84), an emergency motion for a writ of mandamus (DN 34), a motion to expedite a ruling on the emergency motion (DN 36), and five more "emergency motions"—one to compel the Court's ruling on pending motions (DN 43), two for "miscellaneous relief" (DNs 48, 52), and two to "void" orders from the state family-court case (DNs 58, 63). Rock also filed various motions to strike (DNs, 50, 80), discovery motions (DNs 38, 42, 65), and a motion to disqualify counsel (DN 66).

The Court referred the motion for discovery (DN 38) and motion to compel discovery and for judicial oversight (DN 42) to Magistrate Judge King. *See* DN 61 (citing 28 U.S.C. § 636(b)(1)(A)). The same order also asked Judge King to prepare a Report and Recommendation regarding the emergency motion (DN 34), motion to expedite ruling (DN 36), motion to compel judicial action (DN 43), and motions for miscellaneous relief (DNs 48, 52). *See* 28 U.S.C. § 636(b)(1)(B).

Judge King denied the discovery orders (DN 69). No party objected to his ruling on these motions. Judge King also issued a Report and Recommendation on the remaining motions referred to him (DNs 34, 48, 52, 36, 43), recommending they all be denied. *See* Report and Recommendation (DN 70). He noted that Rock failed to show he was entitled to the "drastic and extraordinary remedy" of mandamus or that the Court had jurisdiction to grant the relief he sought (including the initiation of criminal proceedings against the Defendant). *Id.* at 2.

Under 28 U.S.C. § 636(b)(1), the Court reviews *de novo* the portions of the Magistrate Judge's Report and Recommendation to which a party properly objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); FED. R. CIV. P. 72(b). The Court may adopt without review any portion to which no objection is made. *Id.*

### C. Emergency Motion for Writ of Mandamus (DN 34), Motion to Expedite Ruling (DN 36), and Motion to Compel Judicial Action (DN 43)

Rock's "emergency" motion to declare Judge Perlow's orders void (and request for mandamus) asks the Court to declare Judge Perlow's orders void *ab initio* for allegedly failing to comply with a mandatory custody hearing. *See* Emergency Motion (DN 34) at 1 (citing Ky. Rev. Stat. § 403.785(3)); *but see* Objections (DN 71) at 2–3 (citing Ky. Rev. Stat. § 620.080 (correct citation regarding mandatory custody hearings)); 28 U.S.C. § 1651(a) (courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of

law"). He asks the Court to reinstate an earlier custody order in his favor, issue an injunction preventing interference with his parental rights, and impose an "automatic mandamus trigger" requiring Defendants to produce certified documents within five days verifying that a statutory custody hearing occurred or else acknowledge that no hearing occurred. Emergency Motion at 3–4. One week later, Rock filed a motion to expedite the Court's ruling on this emergency mandamus request (DN 36). And shortly thereafter he filed another "emergency" motion to compel the Court's ruling on his first emergency motion (DN 43).

The Report and Recommendation correctly concluded that Rock cannot satisfy the demanding requirements for mandamus. DN 70. Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *In re King's Daughters Health Sys.*, 31 F.4th 520, 525 (6th Cir. 2022) (citing *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). The remedy requires the movant to show that no other remedy is adequate and available, that the right to that relief is "clear and indisputable," and that the writ is "appropriate under the circumstances." *Id.* at 525–26. A writ of mandamus is "not intended to substitute for appeal after a final judgment." *See In re Life Invs. Ins. Co. of Am.*, 589 F.3d 319, 323 (6th Cir. 2009).

As Judge King correctly noted, Rock does not meet any of those requirements.

*First*, Rock has an adequate alternative with which to challenge the state-court proceedings: the state appellate process, which Rock concedes he has used. *See* Rock's Response on Motion to Dismiss (DN 10) at 4.

*Second*, he identifies no "clear and indisputable" right. *In re King's Daughters Health Sys.*, 31 F.4th at 525. As Judge King explained, the Kentucky statutes Rock cited were misconstrued, misquoted, or irrelevant. Report and Recommendation at 3–4. Rock also cited cases that do not appear to exist. *See, e.g.*, Motion to Expedite Ruling (DN 36) at 2 (citing "*Smith v. Smith*, 2015-SC-000123" and "*Smith v. Smith*, 491 S.W.3d 71 (Ky. 2016)," which, as Judge King noted, do not exist).

Finally, Judge King noted that Rock failed to show a writ is "otherwise appropriate" under the circumstances. DN 70 at 4; *see also In re Pros. Direct Ins. Co.*, 578 F.3d 432, 437 (6th Cir. 2009) (because "mandamus is a discretionary remedy," judges "may decline to issue the writ" even for otherwise entitled petitioners).

Even if Rock had satisfied the mandamus requirements, however, the Court lacks jurisdiction to void a state-court order, mandamus a state-court judge, or effectively review a state-court judgment. A federal court has "no authority to issue a writ of mandamus directing a state court or its judicial officers in the performance of their duties" because the Court does not have appellate jurisdiction over state courts. *Woods v. Weaver*, 13 F. App'x 304, 306 (6th Cir. 2001) (citing *Haggard v. State*

*of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970)); *see also In re Sutton*, 652 F.3d 678, 679–80 (6th Cir. 2011); *In re Green*, 141 U.S. 325 (1891).

Further, the *Rooker-Feldman* doctrine bars a federal district court's "appellate" review of state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *VanderKodde v. Mary Jane M. Elliot, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). *Rooker-Feldman* prohibits federal district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. That's what Rock's motion asks of this Court: to void the Marshall Family Court orders and reinstate new orders in his favor. Because the injuries Rock seeks to redress in his motion arise from orders in the state-court custody case, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine. *See, e.g.*, *VanderKodde*, 951 F.3d at 402 (courts look to the "source of the injury" when determining whether *Rooker-Feldman* applies).

At the risk of gilding the lily, *Younger* abstention may also bar Rock's motions (to the extent the Marshall Family Court case is ongoing). "A district court may abstain under the *Younger* doctrine if three conditions exist: there are state proceedings that are (1) currently pending; (2) involve an important state interest; and (3) will provide the federal plaintiff with an adequate opportunity to raise his or her constitutional claims." *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013). Those ongoing proceedings involve the state's vital interest in family law. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."). Although the status of Rock's constitutional claims in state court remains unclear, Rock stated his case was "in appeals," ostensibly granting him adequate opportunity to raise constitutional claims. *See Younger v. Harris*, 401 U.S. 37, 45 (1971). Federal intervention could well disrupt the ongoing state judicial process and undermine principles of comity.

None of Rock's objections demonstrate any error in Judge King's recommendation. Rock invoked the Americans with Disabilities Act (Title II (42 U.S.C. § 12132)) but did not allege any facts identifying any disability, how any public entity discriminated against him or denied him access to public services, or how these ADA objections relate to his request for mandamus. Objections (DN 71) at 6. Rock again argued that Judge Perlow's orders were void, procedurally flawed, and violated his constitutional rights. *Id.* at 4–9. He contended that mandamus was appropriate because Judge Perlow's orders were ministerial rather than discretionary. *Id.* at 5. *Carson v. United States Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) ("For a writ of mandamus to be warranted, there must be a mandatory or ministerial obligation.") (internal quotation marks and citation omitted). But as noted above, the federal courts lack authority to direct a state judge—even regarding ministerial

matters, *Woods*, 13 F. App'x at 306, which Judge Perlow's orders regarding visitation restrictions, child-support calculations, contempt orders, and evidentiary rulings do not appear to be in any event. Conduct is discretionary if it "involves an element of judgment or choice." *See generally Am. Reliable Ins. Co. v. United States*, 106 F.4th 498, 505 (6th Cir. 2024) (cleaned up). And "[m]andamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Carson*, 633 F.3d at 491 (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).)

After this Court's review, therefore, Judge King appears to have correctly concluded that mandamus is not appropriate or authorized. Rock's objections to this recommendation, like many of his filings, correctly recognizes that void orders may in many circumstances be set aside. But an overarching principle that prevents Rock from receiving relief on that basis is the separate nature of our federal and state court systems: this federal district court is not a court of appeal empowered to review errors of state judges. *See VanderKodde*, 951 F.3d at 402. In general, that is a function for the state courts of appeal—not the federal trial court.

### D.   Remaining Motions

**1.** Rock asked the Court refer Judge Perlow to the Attorney General for prosecution of alleged RICO violations and to impose financial penalties and "RICO treble damages" of $333,100,000. DN 48 at 1, 3. Rock also seeks compensatory damages, including $100,000,000 "for financial losses" and "$470,000 current legal fees." *Id.* at 5. A subsequent emergency motion adds a request for an "Award of $30,000,000 in Equitable Relief (good faith and very reasonable)." DN 52 at 1. Rock also requests summary judgment and default judgment. DN 48 at 4. He includes multiple overlapping requests for relief or prosecution including "Qui Tam Enforcement" and recovery under the False Claims Act. *Id.* at 4–5. Rock also asks the Court to suspend Judge Perlow pending federal investigation. DN 52 at 3. Judge King suggested at least some of Rock's many "emergency" requests were filed "in order to swiftly 'bring the Court's attention'" to his Motion for Mandamus. Report and Recommendation at 4, quoting DN 43 at 1. It's not clear that Rock raised any objections to Judge King's dismissal recommendation with respect to these requests, DN 71, which appears correct in any event.

In particular, Rock's request that this Court initiate criminal prosecution (DN 48 at 1) is improper because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Sefa v. Kentucky*, 510 App'x 435, 438 (6th Cir. 2013) (quoting Linda *R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). And as Judge King explained, federal courts lack authority to compel criminal investigations or prosecutions—certainly with respect to state matters. *See* DN 70 at 6; *cf. United States v. Traficant*, 368 F.3d 646, 650 (6th Cir. 2004) ("the Executive Branch [has]

exclusive authority and absolute discretion to decide whether to prosecute a case") (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)).

**2.** The Court also adopts Judge King's recommendation that Rock receive a formal warning "that he risks being deemed a vexatious litigant," subject to pre-filing restrictions, if he continues to file "frivolous and harassing pleadings." *See* DN 70 at 6. The Court understands the difficulties facing non-lawyers who attempt to navigate the court system on their own—particularly on matters of sensitivity such as child custody and family relations. As a result, the law construes *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But *pro se* litigants, like all parties, are bound by the courts' jurisdictional limits and procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Some of Rock's filings include references to caselaw that appears not to exist, mislabeled motions, and other difficult-to-follow arguments. *See, e.g.*, DN 36 at 2 (citing "*Smith v. Smith*, 491 S.W.3d 71 (Ky. 2016)," which does not appear to exist at that citation); DN 48 at 3 (including vague references to "Qui Tam Enforcement" in his "Emergency Motion"). Such filings burden other litigants and place judges in the uncomfortable position of recasting arguments and supporting authorities in order to make out the parties' positions. Rock, like other litigants, must exercise care in preparing motions and other filings.

## ORDER

For the reasons stated above, the Court overrules Rock's objections (DN 71), adopts Judge King's Report and Recommendation (DN 70), and denies the Emergency Motion to Declare Judge Perlow's Orders Void and to Issue a Writ of Mandamus (DN 34), and Emergency Motions for Miscellaneous Relief (DN 48, 52). The Court further denies the Motion to Expedite Ruling on Emergency Motion for Writ of Mandamus (DN 36) and the Emergency Motion to Compel Judicial Action on Pending Motion (DN 43) as moot.