UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

R<small>ON</small> D<small>AVID</small> R<small>OCK</small>                                             P<small>LAINTIFF</small>

v.                                                                    N<small>O</small>. 5:24-cv-181-BJB

J<small>UDGE</small> P<small>ERLOW</small>, <small>ET AL</small>.                                        D<small>EFENDANTS</small>

\* \* \* \* \*

M<small>EMORANDUM</small> O<small>PINION</small> & O<small>RDER</small> G<small>RANTING</small> M<small>OTIONS TO</small> D<small>ISMISS</small>

As discussed in the Court's prior order, this case concerns federal civil claims arising out of a state-court custody dispute between *pro se* Plaintiff Ron Rock and the mother of K.R., his minor child. Rock sued Marshall Family Court Judge Perlow, who presided over the custody case in 2021, for violating Rock's constitutional rights through her rulings in state court.

Rock also sued the Judicial Conduct Commission for "failing to conduct a thorough investigation" of Judge Perlow's actions and failing to "take appropriate action to correct" those actions. Complaint at 10. He sued the Marshall County Attorney for failing to "uphold the Parental Kidnapping Prevention Act" and violating state law, presumably in its enforcement of state child-support laws. *Id.* at 11. He named as a defendant an entity he labeled "Child Support Enforcement" (which doesn't appear to be a suable state agency) for violating state law governing child-support obligations. *Id.* at 11. And he sued the Kentucky Administrative Office of the Courts for neglecting its duty to "overse[e] the conduct of judges and ensur[e] that they uphold the constitutional rights of individuals." *Id.* at 12.

To remedy these alleged violations, Rock seeks more than $100 million in combined punitive and compensatory damages. He also seeks an order revoking Judge Perlow's law license, recalculating his child-support obligations, and invalidating Judge Perlow's custody and child-support orders. Complaint at 18–19.

All the Defendants save "Child Support Enforcement" (which wasn't served and hasn't appeared) filed motions to dismiss. *See* DNs 4, 5, and 9. Those motions argue that the Court lacks jurisdiction over Rock's claims, that the Defendants are immune from suit, and that the Complaint otherwise fails to state claims under F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6). Rock responded by filing a motion to amend his complaint (DN 6), responses in opposition to each motion to dismiss (DNs 10, 12, and 25), and two dozen additional motions. This latter category included at least six "emergency" motions—

1

one of which was styled as a motion for a writ of mandamus, several summary-judgment motions, multiple discovery motions, and a motion to disqualify counsel.[1]

Rock's proposed amended complaint (DN 6-1) dismisses the Administrative Office of the Courts because of "a misunderstanding regarding their involvement and responsibilities in this matter." Motion to Amend (DN 6) at 1.[2] The Court therefore grants in part Rock's motion to amend to the extent Rock voluntarily dismisses the AOC from the case and denies the AOC's motion to dismiss as moot. But even considering the "less stringent" pleadings standards that apply to *pro se* plaintiffs, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court must dismiss Rock's remaining claims for lack of jurisdiction, immunity, and failure to state claims. So Rock's motion to file an amended complaint will be denied in part as futile and all of his remaining pending motions will be denied as moot. *See* FED. R. CIV. P. 15; *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

**I. Claims against Judge Perlow**

Rock's Complaint focuses on the alleged misconduct of Judge Perlow in her individual capacity as the presiding judge of his child custody case.[3] Complaint at

---

[1] The Court referred two discovery motions to Magistrate Judge King under 28 U.S.C. § 636(b)(1)(A). *See* DN 61. The Court also referred the emergency motion (DN 34), motion to expedite ruling (DN 36), motion to compel judicial action (DN 43), and motions for "miscellaneous relief" (DNs 48, 52) to Judge King under 28 U.S.C. § 636(b)(1)(B) for the preparation of a report and recommendation. *See* DN 61. Judge King denied the discovery requests (DN 69) and issued a report on the other referred motions recommending their denial. The Court adopted Judge King's Report and Recommendation and denied the motions. *See* DN 86.

[2] Buried in the middle of an unrelated status report several months—and dozens of filings—after filing his motion to amend his Complaint, Rock suddenly reversed course and stated that he "respectfully withdraws the amended complaint" and that the "Administrative Office of the Courts (AOC) remains a party to the case." DN 79 at 2. Though the Court applies lenient pleading standards to *pro se* litigants, that leniency is not limitless. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991). But even if the Court construed this status report as a motion to withdraw his amended complaint (and granted it), his claims against Kentucky's Administrative Office of the Courts would be dismissed under the Eleventh Amendment. *See Harmon v. Goodwin*, No. 3:24-cv-00047, 2025 WL 449809, at *7 (W.D. Ky. Feb. 10, 2025) (Kentucky AOC is an "agenc[y] of the Commonwealth of Kentucky" and "the Eleventh Amendment bars any Section 1983 claim against" it.); *Miller v. Admin. Off. of Cts.*, No. 3:01-cv-339, 2001 WL 1792453, at *1 (W.D. Ky. Sept. 11, 2001) ("[T]here is no dispute that the AOC is an arm of Kentucky's government.").

[3] Rock does not appear to assert a claim against Judge Perlow in her official capacity. But to the extent he intended to bring official-capacity claims against her, "the Eleventh

10. Rock alleges that her orders violated the 14th Amendment and brings his claims under 42 U.S.C. § 1983. *See* Complaint at 3. But Rock cannot succeed on any of these claims because the Court either lacks jurisdiction over the claims and requested remedies, or is otherwise barred from adjudicating them by abstention and immunity doctrines.

**A. The *Rooker-Feldman* Doctrine.** This doctrine prevents federal district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries. Corp.*, 544 U.S. 280, 284 (2005). Under 28 U.S.C. § 1257, only the Supreme Court may hear appeals from state-court judgments.

"If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *VanderKodde v. Mary Jane M. Elliot, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). In this case, Rock's injuries—at least those related to his claims against Judge Perlow—arise directly from orders in the state-court custody case.[4] Rock claims that his relationship with his child has been damaged by restricted visitation rights and that he has incurred damages from Judge Perlow's "improper calculation of child support." Complaint at 10. Indeed, he asks that "[a]ll Judge Perlow's rulings be dismissed and removed from [the] docket." *Id.* at 18.

Courts have called cases like Rock's an "easy … application of the *Rooker-Feldman* doctrine." *Goodman ex. Rel Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001) (relief barred by *Rooker-Feldman* because "the primary relief sought … was an injunction preventing enforcement of the state court judgment and returning custody to the aggrieved parent."); *see also Evans v. Klaeger*, 12 F. App'x 326, 327 (6th

---

Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Kentucky Circuit Court judges are state officials. *See Newton v. Kentucky State Police*, No.3:06-cv-42, 2009 WL 648989, at *6 (E.D. Ky. Mar. 11, 2009) (Kentucky Circuit Courts are "unquestionably" arms of the state "as a matter of Kentucky law."). And "a suit against a state official in his or her official capacity is … a suit against … the State itself." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). So Eleventh Amendment Immunity would bar any official-capacity claims against her.

[4] As described above, Rock's filings in this case are numerous and lengthy. The Court liberally construes all of Rock's *pro se* filings and holds him to less stringent pleadings standards than those proceeding with counsel. *Erickson*, 551 U.S. at 93–94. Given these considerations, it appears all the claims against Judge Perlow arise from orders issued in the family court case. Nevertheless, to the extent Rock intended to bring other claims against Judge Perlow, those would be dismissed for failing to state a claim. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

3

Cir. 2001) (*Rooker-Feldman* applied when the complaint "[m]erely raise[d] specific grievances regarding decisions of Ohio's domestic relations courts.")  The Court lacks jurisdiction to review and overrule Judge Perlow's judgments regarding custody and child support.  So the Court dismisses Rock's claims against Judge Perlow.

**B. *Younger* Abstention.**  The status of the underlying Marshall Circuit Court case—and whether it remains ongoing—is not entirely clear from Rock's complaint.  To the extent those proceedings resulted in final judgments (or otherwise appealable orders), then *Rooker-Feldman* would apply to bar this court's review of a state court's "rendered judgment" or "decision on the merits."  *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 393 (6th Cir. 2021) (citation and internal quotation marks omitted).  To the extent the proceedings remain ongoing, *Younger* abstention strongly cautions federal courts from adjudicating such cases based on the "threa[t] [of] undue interference with state proceedings."  *Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019) (quotation marks omitted).  This variety of abstention doctrine "applies when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims."  *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998).

Rock's custody case certainly involves an important state interest.  "[C]ases out of the Supreme Court and this Court make it clear that abstention is generally appropriate in matters of family relations such as child custody."  *Meyers v. Franklin Cnty. Ct. of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001).  And Rock hasn't identified any reason (nor is any reason apparent) why he would not have been able to raise constitutional claims in the state proceedings.  *See* Rock's Response to Motions to Dismiss (DN 12) at 17 (concluding without any explanation that the state proceedings "failed to provide an adequate opportunity to raise constitutional claims").  The Court therefore dismisses the claims against Judge Perlow under the *Younger* abstention doctrine to the extent he asks the Court to grant relief that might interfere with any ongoing state proceedings by voiding, dismissing, or changing any of Judge Perlow's orders (even assuming a federal court would have authority to intervene in the state judicial process in any such way, *see Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (explaining that "an injunction against a state court or its machinery would be a violation of the whole scheme of our Government") (internal quotation marks omitted)).  *See* Complaint at 18 (asking for "[r]ecalculation of child support" and "joint custody time.").[5]

---

[5] Just as this Court lacks jurisdiction to enjoin a state-court judge from conducting state-court proceedings, *see Jackson supra*, this Court lacks power to disbar a state-court judge, as Rock requests, seemingly for some injury her rulings have caused him.  To the extent Rock requests that remedy to redress injuries caused by her rulings, the *Rooker-Feldman* doctrine described above forecloses federal relief.  To the extent that requested remedy is tethered to some ongoing state-court case, it falls within the scope of the *Younger* abstention described

4

**C. Judicial Immunity.** Rock seeks legal damages in addition to the equitable relief discussed above. *See* Complaint at 18 ("seeking $100 million in damages for the emotional, loss of life, numbness, inability to feel, and financial damage caused by Judge Perlow decisions"). When a complaint seeks "both equitable [relief] and money damages … a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law." *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) (internal quotations omitted). So *Younger* abstention doesn't dispose of the damages claims against Perlow.

Yet those claims must be dismissed for a separate reason: Judge Perlow is absolutely immune from the damages Rock seeks. "It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). And "[i]mmunity from a § 1983 suit for money damages is no exception." *Id.* This immunity applies to all actions taken in a judge's judicial capacity, "even when the judge is accused of acting maliciously and corruptly," as Rock has alleged of Judge Perlow. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). The Court therefore dismisses the claims against Judge Perlow to the extent they seek money damages.

## II. Judicial Conduct Commission

The Judicial Conduct Commission is a state body established by the Kentucky Constitution that has the authority to remove or suspend Kentucky court judges or justices for misconduct. *See* KY. CONST. § 121. Rock alleges the JCC "fail[ed] to conduct a thorough investigation" of Judge Perlow's actions "and take appropriate action to correct these violations." Complaint at 10. Though Rock's Complaint indicates he is suing the Judicial Conduct Commission in its "individual capacity," Rock does not identify any individual or individual actions that he claims contributed to his alleged harm.[6] The Court therefore construes this claim as an official-capacity claim.

Eleventh Amendment immunity extends to state entities. Because "the commission [is] a state body," KY. CONST. § 121, sovereign immunity extends to the JCC as an arm of the state. *See Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d

---

here. And in any event Rock has pled no cause of action for which disbarment is an available remedy.

[6] To the extent Rock intended to bring an individual-capacity claim under § 1983 against a person on the Judicial Conduct Commission, any such claim would be subject to dismissal under FED. R. CIV. P. 12(b)(6). Rock's Complaint does not allege any facts connecting any action by an individual JCC member to any of his claims.

5

610, 615 (6th Cir. 2003) (factors courts consider in determining whether an entity is an arm of the state include "how state law defines the entity" and "whether the state would ultimately be liable" for damages); *Mischler v. Lambert*, 3:08-cv-231, 2008 WL 4327444, at *4–5 (W.D. Ky. Sept. 19, 2008) (holding Kentucky's Judicial Conduct Commission immune from liability under the Eleventh Amendment). Because the JCC is entitled to sovereign immunity, the Court dismisses Rock's claims against it.

### III. Marshall County Attorney

Rock alleges that the Marshall County Attorney, Jason Darnell,[7] "failed to uphold the Parental Kidnapping Prevention Act" and other "powers and duties" in connection with his custody case. He contends that the County Attorney is liable for not enforcing child-custody payments or prosecuting K.R.'s mother for not returning K.R. to his custody. Complaint at 11, 13.

At times, Rock's Complaint implies the County Attorney is liable for judgments made in the custody proceedings. For example, he alleges that "Judge Perlow and County Attorney of Marshall County allowed [his child's mother] to keep K.R. from her father … without even having a hearing for a temporary order." Complaint at 12. And he alleges that Judge Perlow's denial of his motion to recalculate child support payments "also falls on the county attorney [for] failing to …. [k]eep child support current and doing something about delinquent payees." *Id.* at 13. To the extent Rock argues the County Attorney is liable for enforcing orders and decisions made in the child custody case, those claims are "inextricably intertwined" with Judge Perlow's state-court judgments and are barred by *Rooker-Feldman*. *See Kafele v. Lerner, Sampson & Rothfuss, LPA*, 161 F. App'x 487, 489 (6th Cir. 2005) ("[T]here is simply no way for this or any other court to grant relief without disturbing the judgments … entered by the state court. Each of the myriad and vague claims set forth by the plaintiffs rests on the premise that the state court entry of foreclosure was invalid."). Because the source of his injuries appears to be the state-court judgments previously discussed above, and Rock's concerns with the County Attorney relate to advocacy regarding the challenged orders, the Court dismisses the claims under the *Rooker-Feldman* doctrine. *See Hancock v. Miller*, 852 F. App'x 914, 921

---

[7] Rock's Complaint asserts claims against the County Attorney in his "individual capacity." *See* Complaint at 2. But at points it appears to assert claims against the County Attorney's "Office" for failing to uphold Kentucky statutes—implying official-capacity claims. *Id.* at 11. Official-capacity claims against Kentucky county prosecutors related to their "duties as a state agent … enforcing state law or policy" are barred by sovereign immunity. *Carter v. Logsdon*, No. 4:23-cv-30, 2024 WL 1323653, at *2 (W.D. Ky. Mar. 27, 2024) (cleaned up); *see* Ky. Rev. Stat. § 15.700 (creating Kentucky's "unified and integrated prosecutor system"). Because Rock's official-capacity claims against the County Attorney involve that official's role in enforcing Kentucky custody orders and child support payments, the Eleventh Amendment shields the County Attorney from liability. *Graham*, 473 U.S. at 169.

6

(6th Cir. 2021) ("[I]f a third party's actions are the product of a state court judgment, then challenging the acts would be to challenge the judgment itself….") (citation and internal quotation marks omitted).

Even if the Court were to construe Rock's claims against the County Attorney not to challenge the state-court rulings, Darnall would remain immune from liability. "Prosecutors are absolutely immune from liability under § 1983 for their conduct ... insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). That immunized conduct embraces decisions whether to prosecute particular individuals. *See Imbler*, 424 U.S. at 430. So Rock cannot hold the County Attorney liable for his failure to initiate a criminal case or investigation against K.R.'s mother for failing to pay child support or follow custody orders. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) ("It is clear that the decision of the prosecutors to investigate a serious criminal charge is protected by absolute immunity."). Because the County Attorney has asserted prosecutorial immunity, Rock cannot hold him liable for failing to bring charges against K.R.'s mother for alleged violations of Kentucky custody or child support laws.

Finally, Rock's Complaint makes a vague reference to the County Attorney telling an "officer to not get involved" when Rock called the police about a custody dispute. Complaint at 11. It is true that "[p]rosecutors act as investigators" "when giving legal advice to the police," and in that capacity "are entitled at most to only qualified immunity." *Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021), *as corrected on denial of reh'g en banc* (Mar. 16, 2021). Rock's Complaint is not sufficiently pled to state a claim under FED. R. CIV. P. 12(b)(6) regarding any illegal investigatory acts by the County Attorney. The County Attorney has nevertheless invoked qualified immunity and the Court agrees Rock has not shown a "clearly established constitutional right of which a reasonable person would have known" was violated. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

### IV. Child Support Enforcement

Finally, Rock's Complaint (at 8) named "Child Support Enforcement" as a Defendant. But Rock never filed any proof of service for this Defendant. And no Defendant by this name ever entered an appearance in this case. In August 2025, the Court ordered the parties to file a status report indicating whether any Defendant by the name of "Child Support Enforcement" was ever served, and whether that party is a "viable Defendant" in the case. DN 77.

The County Attorney, Judicial Conduct Commission, and Administrative Office of the Courts filed a joint status report explaining the address Rock gave for "Kentucky Child Support Enforcement" is associated with a P.O. box used by a "third-

party contractor to collect child support payments on behalf of agencies throughout the Commonwealth." Defendants' Status Report (DN 78) at 1–2. Rock, for his part, filed a 10-page "status report" that primarily reiterated arguments contained in prior filings. For example, he continues to argue that "The State Court Orders are Void" and the "Orders are Invalid Due to Systemic Due Process Violations." Rock's Status Report (DN 79) at 3.

As for the Defendant "Child Support Enforcement," Rock claims this party is "within the Office of the Attorney General as the Division of Child Support Services" and that service was effectuated "more than eight months ago." *Id.* at 1. He further argues that the Attorney General had "both constructive and actual" notice. Even if true, the Court would not have jurisdiction over any of the claims asserted against any entity dubbed "Child Support Enforcement."

Those allegations are hardly clear, vaguely asserting that it "perpetuat[ed] the violations of [his] civil rights committed by Judge Stephanie Perlow" and failed to "correct" Judge Perlow's child support calculations. *Id.* at 11. Nor do the pleadings make clear what exactly this Defendant could or should have done that would have changed Judge Perlow's child-support or custody orders. To the contrary, it appears that any claims against this entity are "inextricably intertwined" with these state-court orders themselves. *Kafele*, 161 F. App'x at 489. As discussed above, Rock may not challenge those state-court orders in federal court. And in any event, Rock's Complaint only contains conclusory allegations against "Child Support Enforcement" and it fails to state a plausible claim upon which the Court may grant relief. *See* FED. R. CIV. P. 12(b)(6). So the Court dismisses any claims against this entity.

**V. Remaining Motions**

These additional motions remain pending, but are moot given the Court's conclusion that it lacks jurisdiction to award the relief Rock seeks:

- Three motions for summary judgment (DNs 11, 13, 84);
- A motion for relief from the Marshall Circuit Court judgments (DN 62);
- An "emergency" motion to disqualify Judge Perlow and declare her orders void (DN 63);
- A motion requesting disciplinary proceedings against Judge Perlow (DN 64);
- A motion to compel the production and preservation of evidence (DN 65)
- A motion to disqualify counsel for Judge Perlow and the Administrative Office of the Courts (DN 66);
- A supplemental motion for relief from Marshall Circuit Court judgments (DN 68);
- A motion to "force judgment" on his prior motions (DN 74); and

8

- A motion to strike Judge Perlow's and AOC's combined response in opposition of one his motions (DN 81).

Given the decision to grant the Defendants' motions to dismiss, the Court denies these motions as moot rather than deciding them on their merits.

*****

Rock's filings in this case are numerous, lengthy, and at times difficult to understand. And they seek broad relief the Court is largely unauthorized to provide—including requests to void or reissue state-court custody and child-support orders, revoke bar licenses, issue sanctions for state-court litigation, initiate criminal prosecutions, and award damages of more than $100 million.

The federal courts also lack jurisdiction over most of Rock's claims, given that most and perhaps all of his alleged complaints and injuries trace back to custody and child-support orders issued by the Marshall Circuit Court. As explained above, this Court may not hear appeals of state-court orders. *See Exxon Mobil Corp.*, 544 U.S. at 284; 28 U.S.C. § 1257. And to the extent those custody proceedings remain ongoing, this Court should abstain from interfering. *See Carroll*, 139 F.3d at 1074. Sovereign immunity bars "official capacity" claims for damages against Judge Perlow, the Judicial Conduct Commission, and the County Attorney. And absolute immunity for judges and prosecutors bars "individual capacity" claims for damages against Judge Perlow and the County Attorney.

The Court therefore grants the Defendants' motions to dismiss with prejudice (DNs 4, 5, and 9), grants in part Rock's motion to amend his complaint to voluntarily dismiss the Administrative Office of the Court, otherwise denies the motion to amend as futile (DN 6), and denies as moot all other pending motions.